JUSTIN H. SANDERS (SBN 211488)
jsanders@sandersroberts.com
REGINALD ROBERTS, JR. (SBN 216249)
rroberts@sandersroberts.com
NAVDEEP K. SINGH (SBN 284486)
nsingh@sandersroberts.com
JASON S. ZIVEN (SBN 274179)
jziven@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 West 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsimile: (213) 234-4581

*Attorneys for Plaintiff*
**MAURICE HOLLOWAY**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| MAURICE HOLLOWAY, an individual, | CASE NO. 2:25-cv-02183 DSF (MARx) |
|---|---|
| Plaintiff, | FIRST AMENDED COMPLAINT FOR: |
| v. | 1. DISCRIMINATION BASED ON RACE IN VIOLATION OD FEHA (CAL. GOV. CODE §§ 12900 ET SEQ.) |
| MICHAEL PATRICK CARROLL, an individual; MPC Partnership Holdings, LLC dba CARROLL; The RMR Group LLC; and DOES 1 through 50, inclusive, | 2. HOSTILE WORK ENVIRONMENT IN VIOLATION OF FEHA (CAL. GOV. CODE §§ 12900 ET SEQ.) |
| Defendants. | 3. RETALIATION IN VIOLATION OF LABOR CODE § 1102.5 |
|  | 4. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY |
|  | 5. ASSAULT |
|  | 6. SEXUAL HARASSMENT |
|  | 7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
|  | 8. VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ. |
|  | 9. FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT (CAL. GOV. CODE §§ 12900 ET SEQ.) |
|  | 10. FAILURE TO INVESTIGATE IN VIOLATION OF FEHA (CAL. GOV. CODE §§ 12900 ET SEQ.) |

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

11. NEGLIGENT HIRING, SUPERVISION OR RETENTION

**JURY TRIAL DEMANDED**

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Plaintiff MAURICE HOLLOWAY a/k/a TY ("Ty"), an African American male, by and through his counsel, allege on information and belief as follows:

**PRELIMINARY STATEMENT**

1.      This lawsuit centers around the unconscionable and racist behavior of the self-proclaimed real estate mogul and "philanthropist" Michael Patrick Carroll ("Patrick") directed towards Ty, during Ty's four-year employment at MPC Partnership Holdings, LLC dba Carroll ("MPC Partnership"), which was the successful real estate business that Patrick founded in 2004.  During the course of Ty's employment, The RMR Group LLC ("RMR") acquired MPC Partnership.  After RMR's acquisition of MPC Partnership, the entity began doing business as RMR Residential.

2.      Over the course of Ty's employment with MPC Partnership and RMR, Patrick enticed Ty by dangling a taste of the good life in front of him and simultaneously maintained control over him by threatening violence against him, threatening to ruin his career, paying one of his security guards to attack him, and constantly subjecting him to verbal abuse, including racial slurs and grotesque sexual threats and comments.

3.      Ty endured an unimaginable hostile work environment and conduct that violated seemingly every California employment law before and after RMR's acquisition of MPC Partnership.  For example, during Ty's employment, Patrick made racial slurs in front of Ty and openly consumed excessive quantities of drugs, believed to be, ketamine and "pink cocaine."  Patrick sent Ty pictures of his penis, embarrassed him in front of other employees, and solicited escorts in front of him.

4.      Notably, Patrick, who is Caucasian, frequently employed African American individuals in subservient roles, such as assistants and bodyguards, and hurled racial slurs towards them in Ty's presence.  On multiple occasions, Patrick indiscriminately called Ty the "n-word," and even brazenly used this term in text messages.  For example, in one text message exchange, Patrick wrote an open threat

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

to Ty, "**N word**…Try me bitch."  Patrick used these types of threats to dissuade Ty from taking any action against him to stop his racist and abusive behavior.

5.     Patrick had a particular disdain for any service worker who failed to meet his ridiculous demands.  In a lawsuit filed against him in Miami-Dade County, the plaintiff alleged that Patrick told a manager at Carbone, a high-end Italian restaurant in Miami, "**Never in my life will I bow down to a street [N----] like yourself**."  On information and belief, after investigating the incident, the parent company for the restaurant (Major Food Group) banned Patrick from patronizing the restaurant.

6.     On information and belief, for nearly a decade, Patrick has exhibited a pattern of berating, pushing and spitting on employees and service workers who are predominantly members of racial minority groups.  His actions have led to a laundry list of criminal and civil complaints in multiple jurisdictions, all of which are matters of public record.

- On information and belief, in 2020 a Florida Circuit Court judge ordered Patrick to serve 16 days in jail for failing to pay court ordered child support and violating a domestic violence protective order obtained by Patrick's ex-wife.

- On information and belief, in 2022 Miami Police ("Miami PD") arrested Patrick at the Goldrush strip club for felony battery after two employees accused him of assault.

- In the summer of 2023, the assistant manager of a Miami sushi restaurant filed a lawsuit against Patrick for assault, battery and intentional infliction of emotional distress.  The lawsuit alleges that Patrick approached a couple who was on a date at the restaurant and made a romantic pass at the female in front of her date.  The lawsuit further

FIRST AMENDED COMPLAINT

alleges that Patrick spit in the manager's face when he asked Patrick to respect the privacy of the female patron.[1]

7.     Patrick knew that Ty feared him because of these incidents, and his often volatile and violent actions.  Patrick threatened Ty on numerous occasions and even told Ty that he was going to "kill him."  On another occasion, Patrick challenged Ty to "try him" – a method of psychological abuse and control.  Ty feared for his safety based on Patrick's threats and actions.

8.     On information and belief, on or about July 29, 2023, RMR entered into an agreement to purchase Carrol for $80 million. On information and belief, the parties finalized the transaction on December 19, 2023.  Ty became an employee of RMR on completion of RMR's purchase of MPC Partnership.

9.     Based on the public information and lawsuits filed against Patrick that alleged that Patrick assaulted employees at a strip club, defamed his ex-wife's attorney, called the manager of trendy Miami restaurant a "street n----r," and spit in the fact of a different restaurant manager, RMR was on notice, or should have been on notice, of Patrick's racist and criminal behavior.

10.    On information and belief, upon RMR's acquisition of MPC Partnership, RMR acquired the assets, liabilities and all of the employees that worked for MPC Partnership, which was rebranded as RMR Residential.

11.    On information and belief, RMR failed to conduct a meaningful investigation to familiarize itself with all of the individuals employed by MPC Partnership, including individuals who were misclassified as independent contractors, such as Ty.  Furthermore, RMR failed to provide its newly acquired employees, such as Ty, with handbooks, training, or other basic employment protections after acquiring MPC Partnership.

---

[1] *Miguelangel Weill v Carroll*, Eleventh Judicial Circuit of Miami-Dade County (Case No.: 2024-012383-CA-01)

FIRST AMENDED COMPLAINT

12.    On information and belief, after RMR's acquisition of MPC Partnership, Patrick conducted himself as if he remained in a position of authority over employees, including Ty.   RMR did nothing to communicate to Ty or other employees of MPC Partnership, acquired in RMR's purchase of MPC Partnership, that Patrick no longer had authority over them.

13.    Both before and after RMR's acquisition of MPC Partnership, Patrick's behavior exhibited a pattern of blatant disregard for public safety and the law.

- On information and belief, in March 2024, Patrick posted a video on his Instagram account that showed him indiscriminately firing a gun into the air.
- Earlier this summer, a videographer filed a lawsuit against Patrick in Miami-Dade County for battery and breach of contract.[2]   Patrick's actions from this incident are the subject of criminal proceedings currently pending as case B24-006295.
- On July 1, 2024, the Los Angeles Police ("LAPD") arrested Patrick and booked him on felony charges for carrying a loaded firearm in public and evading police.  LAPD attempted to conduct a traffic stop while Patrick was driving; however, Patrick refused to stop and led them on a vehicle and foot pursuit.

14.    Ty brings this action to seek justice for his harrowing four-year experience working for MPC Partnership and RMR. He does so despite Patrick's penchant for bullying, lying about and seeking retribution against those who dare to stand up to him.

## **THE PARTIES**

15.    Plaintiff Maurice Holloway is an individual currently residing in the County of Los Angeles, State of California.

_____

[2] *Roberto Gattica v Carroll*, Eleventh Judicial Circuit of Miami-Dade County (Case No.: 2024-012383-CA-01)

FIRST AMENDED COMPLAINT

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

16.    Defendant Michael Patrick Carroll is an individual currently residing in the County of Los Angeles, State of California.

17.    Defendant The RMR Group LLC is a limited liability company doing business in the County of Los Angeles, State of California.

18.    Defendant MPC Partnership Holdings LLC dba Carroll is a limited liability company with a principal office in Atlanta, Georgia.

19.    Plaintiff does not know the true names and capacities of defendants sued in this Complaint as Doe 1 through Doe 50, inclusive, and therefore sues these defendants by fictitious names under Section 474 of the California Code of Civil Procedure. Plaintiff will amend this Complaint to allege the true names and capacities of Doe 1 through Doe 50, inclusive, when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants named herein as Doe 1 through Doe 50, inclusive, is responsible in some manner for the occurrence, injury, and other damages alleged in this Complaint.

20.    Plaintiff is informed and believes that at all times material to this Complaint, each of the Defendants, including each Doe Defendant, was acting as the agent, servant, employee, partner, and/or joint venturer of, and in concert with, each of the remaining Defendants, including Doe Defendants, and while engaging in the acts and omissions alleged herein, each was acting within the course and scope of such agency, service, employment, partnership, joint venture, and/or concert of action. Each Defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment and with the full knowledge, consent, and/or ratification of the remaining Defendants.

## JURISDICTION AND VENUE

21.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

22.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b),

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

because, among other things, the causes of action complained of herein arose in this judicial district; this is the judicial district in which performance of the employment contract, or part of it, between Plaintiff and Defendants was due to be performed; this is the judicial district in which the employment contract, or part of it, between Plaintiff and Defendants was actually performed; and this is the judicial district in which the employment contract between Plaintiff and Defendants, or part of it, was breached by Defendants.

23.    Plaintiff exhausted administrative remedies and obtained the right to sue from the California Civil Rights Department ("DFEH").

**FACTS COMMON TO ALL CLAIMS**

24.    Ty met Patrick at a nightclub in 2019, which initially led to a friendship and Ty informally advising about his social media and other audio/video content. At the time they met, Patrick was the President of MPC Partnership.

25.    By the end of 2020, Ty was producing content for MPC Partnership on a full-time basis.

*Ty's Employment Relationship with MPC Partnership*

26.    Throughout Ty's employment with MPC Partnership and subsequently RMR, he was misclassified as an independent contractor.

27.    By the end of 2020, Ty's entire life was consumed by working for MPC Partnership. On information and belief, MPC Partnership purchased a laptop, a video camera and camera equipment for Ty.

28.    During Ty's employment with MPC Partnership he reported to Patrick. Patrick's executive assistant at Carroll, Stephanie Pagano, ("Pagano"), sent Ty his schedule and a list of required tasks. Typically, Ty would start work at 8:30 am and would accompany Patrick to the gym to film him exercising.

29.    Ty worked for MPC Partnership the remainder of the day. He would create content, which was focused on bolstering Patrick's image and persona as a thought leader in the real estate industry. Frequently, Patrick directed Ty to film him

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

going to restaurants and nightclubs after hours.  Ty accompanied Patrick to most of his meals and meetings.

30.     Ty's employment with MPC Partnership was an all-encompassing job. By the end of 2021, Ty's role expanded into serving as a chief of staff, executive assistant and body man that shadowed Patrick throughout the day.

31.     Patrick directed Ty's travel schedule and Ty needed Patrick's approval for any time off or to conduct outside work.

32.     Ty's core job function was to work seamlessly with MPC Partnership's marketing department to promote Patrick's image as a real estate "guru" in order to promote the business and to serve as Chief of Staff.

33.     MPC Partnership established an official work email address for Ty, which was maurice.holloway@carrollorg.com.

34.     MPC Partnership and later RMR controlled and directed Ty's daily work schedule and duties with few exceptions.  While employed by MPC Partnership, Ty performed work directed by Carroll to increase Patrick's public profile and image in the real estate community, which was the core business area of MPC Partnership and RMR.  The work requirements set by Carroll eliminated almost entirely Plaintiff's ability to perform work for any other person or business.

35.     Ty was not free from the control or direction of MPC Partnership or RMR and MPC Partnership and RMR directed the manner and means of Ty's work, working hours, work location and travel.  Ty often worked full days and countless late nights at MPC Partnership's direction, including multiday travels that required Ty to work and be at Patrick's disposal 24 hours a day.

36.     Ty should have been classified by MPC Partnership and RMR as an employee.  However, MPC Partnership and RMR denied Ty the benefits, rights, payment and employment protections due to him under California law.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

*RMR'S Acquisition of MPC Partnership Despite Notice of Patrick's Criminal*
*Allegations and Multiple Lawsuits*

37.    On information and belief, on July 29, 2023, RMR entered into a binding agreement in which RMR would acquire 100% of MPC Partnership, including MPC Partnership's assets and liabilities (known and unknown), for $80 million.

38.    On information and belief, MPC Partnership, which was renamed RMR Residential, operated as part of the RMR Group.  RMR Group exercised an extreme amount of control over MPC Partnership, including sharing the same corporate leadership and personnel.  For example, Michael Lopez serves as both the Chief Operating Officer of RMR Residential and a Vice President at RMR.  On information and belief, both RMR Group and RMR Residential work with the same 1,000 real estate professionals to manage real estate properties.  On information and belief, RMR Group and RMR Residential have the same ownership.

39.    RMR was on notice, or should have been on notice, of Patrick's outrageous behavior, which was well documented in public lawsuits filed against Patrick prior to its acquisition of MPC Partnership.

40.    On information and belief, Patrick was arrested in Vail, Colorado in 2019 for disorderly conduct after he lashed out at a ski instructor.  On information and belief, he pled guilty to this charge.

41.    On information and belief, Patrick's ex-wife, Lindsey Carroll, filed for a domestic protective order against Patrick.  On information and belief, in 2020 the Florida Circuit Court found Patrick guilty of violating the order and failing to pay court ordered child support.  On information and belief, the judge ordered Patrick to serve 16 days in jail.

42.    On November 5, 2021, Michael Lee Lundy ("Lundy") sued Patrick in the 13th judicial district of the Hillsborough County Florda circuit court for libel per se (Case number 21-CA-008839).  The lawsuit alleges that Patrick sent threatening emails to Lundy, including an email in which Patrick wrote "You will fucking pay for

SR
SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

- 8 -

this you spineless little fucker."  The lawsuit alleges that Patrick published statements on Instagram that Lundy was a homosexual.

43.    On June 3, 2023, about *two months before* RMR entered into an agreement to purchase MPC Partnership, Miguelangel Weill ("Weill") filed a high-profile lawsuit against Patrick in the 11th circuit court in Miami-Dade County for assault, battery, intentional inflectional of emotional distress, and defamation (Case number 2023-017663-CA-01).

44.    Weill's lawsuit alleges outrageous conduct by Patrick in which he brazenly "hit" on a female while she was on a date, including walking up to her at her table.  According to the lawsuit, Weill approached Patrick and requested that he respect the guest's space.  Patrick allegedly subsequently told Weill that he was going to "beat [him] up," made fun of his clothes and spit on him.    The lawsuit further alleges an altercation at the Carborne restaurant in December 2022 in which the service manager Jared LoPriore rebuffed Patrick's attempt to bribe him.  Patrick allegedly responded, "**Never in my life will I bow down to a street [N----] like yourself**."

45.    Notably, Patrick made Ty sign a false affidavit that refutes the incident at Carbone.  In the affidavit, Ty states that he was at the restaurant and Patrick never used a racial slur.  In fact, Ty was not at the restaurant with Patrick.  Ty knew that if he did not sign the affidavit then he would lose his job and given the threats of violence made by Patrick against Ty, he feared worse if he refused.  Carroll then sent Ty the false affidavit to sign on their official company email.

46.    Highly popular and credible media outlets, including the "Real Deal," have published articles about Patrick's lawsuits, and allegations of his racist and homophobic behavior.  On June 14, 2023, the Real Deal published an article with the headline: "Patrick Carroll being sued for defamation, banned from Major Food and

FIRST AMENDED COMPLAINT

1  Simon Kim Restaurants."[3] *See* Exhibit A.

2  47.    Turning a blind eye to Patrick's very public conduct, on July 31, 2023,

3  RMR released a press release in which Patrick stated, "I'm thrilled to see Carroll take

4  the next steps **under RMR's ownership**."  *See* Exhibit B.  This statement provided

5  the impression that Patrick would still be involved in the management and/or

6  ownership of MPC Partnership.

7  48.    On information and belief, RMR failed to conduct the bare minimum

8  level of diligence to determine that Ty was an employee of MPC Partnership.  After

9  the acquisition, Ty continued to be employed by MPC Partnership, and RMR failed

10  to provide him with documents or policies containing its protections against conduct

11  like that exhibited by Patrick.

12  49.    On information and belief, after RMR entered into an agreement to

13  purchase MPC Partnership on or around July 29, 2023, Ty continued to work with

14  Patrick, who continued to hold himself out as the President of MPC Partnership.  For

15  example, three months after the acquisition on November 13, 2023, Pagano sent Ty

16  an email from her official MPC Partnership work email address regarding hosting an

17  event with Patrick the following January.

18  50.    On December 8, 2023, Pagano sent Ty an email from an official MPC

19  Partnership email account regarding Ty's payment.   On information and belief,

20  Patrick continued to hold himself out as the main decision maker of MPC Partnership,

21  even after RMR purchased MPC Partnership.

22  51.    On December 19, 2023, RMR announced the completion of its

23  acquisition of MPC Partnership.  *See* Exhibit C.

24  52.    After the acquisition, Patrick had or was reasonably perceived to have

25  the power to act on behalf of MPC Partnership.  For example, On January 9, 2024, Ty

26  sent invoices in the amount of $12,000 to MPC Partnership at the company's

27

28  ---
[3]    https://therealdeal.com/miami/2023/06/14/patrick-carroll-sued-for-defamation-banned-from-major-food-and-simon-kim-restaurants/.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

corporate headquarters in Georgia.  The invoices were paid on January 22, 2024.

*Carroll's Racist Remarks, Verbal Abuse and Threats of Violence*

53.    Ty is African American. Patrick engaged in a concerted, routine and repeated pattern of offensive and abusive conduct towards Ty based on his race.

54.    Even as Patrick publicly embraced diversity and inclusion, he blatantly and indiscriminately made racial slurs about African American individuals, including directly calling Ty the "n word."

55.    Starting in 2021, Patrick routinely made derogatory comments about minorities in front of Ty.  Starting in 2021, Patrick referred to Hispanic people as "spics" in front of Ty, which made Ty feel uncomfortable.  Starting in 2022, Patrick routinely made racist remarks referred to African American individuals as "n---ers" in front of Ty, which were highly offensive, stress inducing and which made Ty feel uncomfortable.

56.    Starting around the beginning of 2023, Patrick frequently made antisemitic comments about Jewish people in front of Ty, including stating that Jewish people disliked him because he was wealthy.  These comments offended Ty and created a hostile and abusive working environment.

57.    In 2024, Patick and Ty were staying at an upscale hotel, and Patrick summoned Ty to meet him in the lobby to film content of him.  Patrick subsequently ordered Ty back to his room.  Within an hour, Patrick called Ty on his cell phone and told him, you are a "a real n—r," and threatened to kill him.

58.    On August 2, 2024, in response to Patrick's belief that Ty was late to meet him for his criminal court hearing, Patrick sent Ty a patently racist and threatening text message.  Patrick wrote to Ty: "**N word…**Try me bitch.  I'll **whip your ass** in front of everyone and laugh." *See* Exhibit D.

59.    Within one week after this threat of bodily harm and racist text exchange, Patrick sent Ty a text message in which he referred to Ty as a "**bitch ass n**." *See* Exhibit E.  Patrick sent this text because he mistakenly believed Ty failed to fulfill

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

one of his many employment responsibilities and replace the damaged screen of Patrick's iPad. To further embarrass, demoralize, mentally abuse and shame Ty, Patrick copied another employee on the text thread.

60.    Starting in 2021, Patrick constantly verbally harassed and demeaned Ty. Throughout the employment, Patrick was rude, threatening and condescending towards Ty.  In one specific incident, Patrick became enraged upon realizing that the vendors for an upcoming production would not refund his deposit when he cancelled the shoot *the night before* the shoot. Patrick unleased his anger on Ty.  He wrote: "Ty. **You will get your ass here, or wherever I want you to be, whenever I say**.  You owe me a lot of money you little crook…start creating and sending me stuff now, to start working off what you owe me…I'm going through everything with a fine-tooth comb to see if you overcharged me in all areas.  If you did, and it's criminal, **you're going to jail**…. **I'll tarnish you on Social**.  I'll also hire a CA attorney **to sue you** Monday."  Ty now lives in fear that Patrick will act on these threats.  RMR's failure to ascertain that Ty was an employee of MPC Partnership facilitated Patrick's outrageous conduct towards Ty.

*Carroll Threatened to Physically Harm Ty and Instructed his Bodyguard to Attack Ty*

61.    Patrick threatened to physically harm Ty.  On information and belief, in 2021 Patrick ordered one of his bodyguards, Shane, to assault Ty when he believed that Ty made a slight mistake at a content shoot at a restaurant in Atlanta, Georgia because he booked a private room that did not permit filming.  Shane, who had become friendly with Ty, confident to Ty that Patrick had directed him to physically attack Ty.  Additionally, Patrick berated Ty and told him that he would amount to nothing.

62.    In or around March 2024, Patrick, while in possession of a firearm, threatened to shoot Ty in the foot when Ty advised Patrick to refrain from bringing a firearm on a boat with new acquaintances.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

FIRST AMENDED COMPLAINT

63.    In or around August 2024, Patrick threatened to physically beat Ty (evoking racist threats of a white man beating a Black man for minor perceived missteps) because he was allegedly late for a court proceeding. *See* Exhibit D.

64.    In or around August 2024, Patrick threatened to harm Ty because Ty allegedly failed to provide Patrick with sufficient content.

65.    Patrick's history of actual violence made these threats against Ty credible. Ty now lives in fear that Patrick will retaliate against him with violence and by using his resources to further damage Ty.

*Patrick Sent Naked Pictures of Himself and Walked Around Naked*

66.    Patrick frequently sent Ty unsolicited pictures of his penis and even walked around naked in front of Ty in order to harass, demean and mentally traumatize him. Patrick knew such conduct was highly offensive and inappropriate treatment of an employee but seemed to thrive on the power that RMR gave him to act without consequences.

67.    In one series of texts exchanged, Patrick expressed frustration with a certain female by sending Ty a picture of himself with his hand on his penis and the statement, "**I'll jerk my own dick off**. I could get pussy easier in high school. But now I'm rich as fuck. So…Fuck that bitch." *See* Exhibit F. Patrick's misogynistic remarks about women were highly offensive to Ty and further contributed to an increasingly hostile working environment. On information and belief, RMR did nothing to control Patrick because RMR did not want to anger the $80 million "golden goose." In the same text thread, he also sent a picture of himself in a bathtub holding his exposed penis. *See* Exhibit G.

68.    RMR willfully failed to stop or control Patrick's wrongful conduct by failing to conduct the bare minimum level of diligence regarding MPC Partnership's employees because of financial interest and its investment in Patrick and his company. RMR prioritized its financial investment over the safety and well-being of its employees who worked with or for Patrick all to the detriment of Ty and other

FIRST AMENDED COMPLAINT

employees.

69.    Ty's experience, which included being the target of constant racial harassment and threats of violence, has left an indelible mark on him, including causing stress and anxiety, loss of sleep, financial hardship, mental anguish, and fear of retribution.

## **FIRST CAUSE OF ACTION**

(Discrimination Based on Race in Violation of FEHA (Cal. Gov. Code §§ 12900, et seq.) – against Defendants MICHAEL PATRICK CARROLL, MPC PARTNERSHIP, RMR and DOES 1 through 50, inclusive)

70.    Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

71.    At all times relevant hereto, Defendants were employers within the meaning of Government Code section 12926.

72.    At all times relevant hereto, Plaintiff was an employee within the meaning of California Government Code section 12926, and at all times during his employment he performed in a competent, satisfactory manner.

73.    At all times mentioned herein, Defendants knew or perceived Plaintiff to be African American, a member of a protected class.

74.    Government Code section 12920 identifies the policy of this State to be the protection and safeguarding of the right and opportunity of all persons to seek, obtain and hold employment without discrimination on the basis of their disabilities, disability-related activities, complaints against unlawful employment practices, age, race, national origin, color, and/or ancestry.  Government Code section 12921 (a) states that the opportunity to seek, obtain, and hold employment without discrimination because of race, color, or national origin is recognized by the State of California as a civil right.

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

75.     As referenced above, during his employment with Defendants, Plaintiff was routinely subjected to derogatory racial remarks by Patrick, including Patrick's repeated use of the "n-word" directly referencing Plaintiff.   Patrick on multiple occasions called Plaintiff the "n-word" while making direct threats of violence against Plaintiff.   Patrick also constantly used the "n-word" and made other racial slurs and derogatory statements about African American individuals to and in the presence of Plaintiff.   Plaintiff is informed and believes that he was treated differently on account of his race, by, without limitation, being subjected to constant racial slurs, racially charged insults and threats, racially charged comments, retaliation regarding his complaints about such harassment and discrimination, and the eventual constructive termination of his employment.

76.     Plaintiff has exhausted his administrative remedies, received his Notice of Right to Sue, and timely files this action.

77.     Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices against Plaintiff which are not yet fully known.   At such time as such discriminatory practices become known, Plaintiff will seek leave of Court to amend this Complaint in that regard.

78.     As a direct, foreseeable, legal, and proximate result of Defendants' unlawful conduct, acts, and/or omissions, as herein alleged, Plaintiff has suffered and continues to suffer, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress and discomfort, security, solace, and peace of mind, all to Plaintiff's damage in an amount to be proven at trial.

79.     As further direct, foreseeable, legal and proximate result of said discriminatory conduct, acts, and/or omissions, Plaintiff has also been forced to retain attorneys and has thus incurred legal fees, expenses and costs, entitling him to reimbursement of the same pursuant to Government Code section 12965, subdivision (b), in an amount to be proven.

FIRST AMENDED COMPLAINT

80.    Furthermore, Defendants committed the unlawful acts and/or omissions described herein deliberately, intentionally, oppressively, fraudulently, maliciously and in conscious disregard for Plaintiff's rights and safety.  As such, Defendants acted in a willful and intentional manner and their conduct was despicable, malicious and outrageous in that it caused and continues to cause Plaintiff to needlessly suffer cruel and unjust hardship.  Therefore, Defendants' conduct, as herein alleged, justifies an award of punitive and exemplary damages in an amount sufficient to deter them from ever engaging in such conduct again in the future.  Punitive and exemplary damages are further warranted to deter other employers who are similarly situated to Defendants from also behaving in the same manner as Defendants.

## SECOND CAUSE OF ACTION

(Hostile Work Environment in Violation of FEHA (Cal. Gov. Code §§ 12900, et seq.) - against Defendants MICHAEL PATRICK CARROLL, MPC PARTNERSHIP, RMR and DOES 1 through 50, inclusive)

81.    Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

82.    At all relevant times mentioned herein, Plaintiff was employed by Defendants, pursuant to Government Code section 12926, subdivision (d).

83.    Government Code section 12940(j) states that it is an unlawful employment practice under FEHA for an employer, because of race, color, national origin, and/or ancestry to harass an employee.

84.    At all relevant times mentioned herein, Plaintiff is informed and believes Defendants engaged in a concerted, routine and repeated pattern of offensive and abusive conduct, directly because of Plaintiff's race, including routinely subjecting Plaintiff to derogatory racial remarks, including Defendant Patrick's repeated use of the "n-word" when directly referencing Plaintiff.  Defendant Patrick on multiple occasions called Plaintiff the "n-word" while making direct threats of violence against

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Plaintiff.  Defendant Patrick also constantly used the "n-word" and made other racial slurs and derogatory statements about African American individuals to and in the presence of Plaintiff.

85.    Defendant Patrick's conduct was sufficiently severe and pervasive as to adversely alter the condition of Plaintiff's employment.

86.    Plaintiff has been informed and believes, and based thereon alleges that any reasonable person under similar circumstances would have considered the alleged conduct to have created a work environment that was hostile and abusive, and Plaintiff and other employees in fact did consider their work environment to be hostile and abusive.

87.    Plaintiff is informed and believes that Defendants conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and Defendants committed unlawful employment practices.

88.    Therefore, as a direct, foreseeable, legal, and proximate result of Defendants' conduct, as herein described and alleged, Plaintiff suffered substantial loss of tangible job benefits, in addition to anxiety, trepidation, apprehension, panic, dread, fear, worry, embarrassment, humiliation, shame, mental and emotional distress and discomfort, all to his damage in an amount to be proven at trial.

89.    As a further direct, foreseeable, legal and proximate result of the conduct and behavior of Defendants, Plaintiff was also forced to retain attorneys and has thus incurred legal fees, expenses and costs, entitling her to reimbursement of same pursuant to Government Code section 12965(b), in an amount to be proven at trial.

90.    Furthermore, Defendants committed the illegal acts and/or omissions described herein deliberately, intentionally, oppressively, fraudulently, maliciously and in conscious disregard for Plaintiff's rights and safety.  As such, Defendants acted in a willful and intentional manner and their conduct was despicable, malicious and outrageous in that it caused and continues to cause Plaintiff to needlessly suffer cruel and unjust hardship.  Therefore, Defendants' conduct, as herein alleged, justifies an

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

award of punitive and exemplary damages in an amount sufficient to deter them from ever engaging in such conduct again in the future.  Punitive and exemplary damages are further warranted to deter other employers who are similarly situated to Defendants from also behaving in the same manner as Defendants.

## **THIRD CAUSE OF ACTION**

(Retaliation in Violation of Labor Code § 1102.5 - against Defendants MICHAEL PATRICK CARROLL, MPC PARTNERSHIP, RMR and DOES 1 through 50, inclusive)

91.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

92.    At all relevant times herein, Plaintiff was an employee of Defendants.

93.    Pursuant to California Labor Code section 1102.5: "An employer, or any person acting on behalf of the not retaliate against an employee for disclosing information, or because the employer, shall employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

94.    It is against the public policy of the State of California for an employer to retaliate or terminate an employee who reports, or threatens to report, a violation of or noncompliance with a local, state, or federal rule or regulation to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance.  Labor Code section 1102.5; *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167.

FIRST AMENDED COMPLAINT

95.    Plaintiff complained to Defendants of the unlawful treatment to which he was subject due to his race.

96.    Plaintiff is informed and believes, and based thereon alleges, that Defendants retaliated against Plaintiff for participating in protected conduct (i.e., complaining of racial discrimination and harassment) by, among other things, constructively terminating his employment.

97.    Plaintiff is informed, believes, and based thereon, alleges that Plaintiff's complaints to Defendants and others, as described in this Complaint, were substantial motivating factors for Defendants' failure to correct the discriminatory and harassing treatment, leading to the constructive termination of Plaintiff's employment.

98.    As a direct and proximate result of Defendants' willful, knowing, and intentional retaliatory conduct against him, Plaintiff has sustained, and continues to sustain, loss of earnings and benefits, the full nature and extent of which are presently unknown to Plaintiff, who, therefore, will seek leave of this Court to amend this Complaint at such time as these damages are fully ascertained.

99.    As a further direct and proximate result of Defendants' retaliatory conduct against Plaintiff in violation of Labor Code section 1102.5, as heretofore described, Plaintiff has been damaged and deprived of the security, solace, and peace of mind for which he entered the employment relationship with Defendants, thereby causing him to suffer emotional and mental distress, anguish, embarrassment, and humiliation, all to his general damages in an amount according to proof at trial, but in excess of the jurisdictional amount of this Court.

100.    Additionally, Plaintiff is informed and believes, and based thereon alleges that Defendant committed the retaliatory conduct, acts and/or omissions described and alleged herein, deliberately, intentionally, oppressively, fraudulently, maliciously and in conscious disregard for Plaintiff's rights and safety.  As such, Defendants acted in a willful and intentional manner and his conduct, as herein set forth, was and continues to be despicable, malicious and outrageous in that it caused

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

Plaintiff to needlessly suffer cruel and unjust hardship. Therefore, Defendants' retaliatory conduct, acts and/or omissions, as herein alleged, justifies an award of punitive and exemplary damages in an amount sufficient to deter them from ever engaging in such conduct again in the future. Punitive and exemplary damages are further warranted to deter other employers who are similarly situated to Defendants from also behaving in the same manner as Defendants.

101. The violation of California Labor Code section 1102.5 also entitles Plaintiff to civil penalties pursuant to California Labor Code section 1102.5, subdivision (f) in an amount not exceeding $10,000.00 for each violation.

## FOURTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policy - against Defendants MICHAEL PATRICK CARROLL, MPC PARTNERSHIP, RMR and DOES 1 through 50, inclusive)

102. Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

103. It is the public policy of the State of California as expressed in FEHA that individuals shall not be terminated from their employment due to their race, color, or national origin.

104. It is the public policy of the State of California, as expressed in FEHA, that it is unlawful for an employer to terminate, fail to give equal consideration in making employment decisions, fail to treat impartially, adversely affect working conditions, or otherwise deny employment benefits to an individual because he has opposed practices prohibited by FEHA. (C.C.R., Tit. 2, § 11021.)

105. Plaintiff is informed and believes, and based thereon alleges, that his race and/or complaints about racism and harassment were substantial motivating reasons for the termination of his employment with Defendants.

FIRST AMENDED COMPLAINT

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

106.   As a direct and proximate result of Defendants' wrongful termination of Plaintiff's employment in violation of public policy, Plaintiff has sustained, and continues to sustain, loss of earnings and benefits, the full nature and extent of which are presently unknown to Plaintiff, who, therefore, will seek leave of Court to amend this complaint at such time as these damages are fully ascertained.

107.   As a further direct and proximate result of Defendants' wrongful termination of Plaintiff's employment in violation of public policy, Plaintiff has been damaged and deprived of the security, solace, and peace of mind for which he entered the employment relationship with Defendants, and each of them, thereby causing him to suffer emotional and mental distress, anguish, embarrassment, and humiliation, all to his general damages in an amount according to proof at trial, but in excess of the jurisdictional amount of this Court.

108.   Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendants described above was done with malice, fraud, and oppression with conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring his rights.   Therefore, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof of at trial.

## **FIFTH CAUSE OF ACTION**

(Assault - against Defendants MICHAEL PATRICK CARROLL and DOES 1 through 50, inclusive)

109.   Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

110.   The essential elements of a cause of action for assault are: (1) Defendant Patrick acted with intent to cause harmful or offensive contact, or threatened to touch Plaintiff in a harmful or offensive manner; (2) Plaintiff reasonably believed he was about to be touched in a harmful or offensive manner or it reasonably appeared to Plaintiff that Defendant Patrick about to carry out the threat; (3) Plaintiff did not

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

consent to Defendant Patrick's conduct; (4) Plaintiff was harmed; and (5) Defendant Patrick's conduct was a substantial factor in causing Plaintiff's harm.  CACI No. 1301; *Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1603–1604, 146 Cal.Rptr.3d 585.

111.   Actual physical contact is not required for the tort of assault.  *Herrick v. Quality Hotels, Inns & Resorts, Inc.* (1993) 19 Cal.App.4th 1608, 1617.  "The tort of assault is complete when the anticipation of harm occurs."  *Kiesekey v. Carpenters' Trust of Southern California* (1983) 144 Cal.App.3d 222, 232.

112.   Plaintiff was repeatedly assaulted by Defendant Patrick when Defendant threatened Plaintiff in a harmful and offensive manner on repeated occasions.  For example, when Defendant Patrick believed Plaintiff was late to meet Defendant for a criminal court hearing, Defendant Patrick threatened Plaintiff in a text message stating "N-word. . . Try me bitch.  I'll whip your ass in front of everyone and laugh."  On another occasion, Defendant Patrick threatened to shoot Plaintiff in the foot when Plaintiff suggested that Defendant Patrick should not bring a firearm onto a boat with new acquaintances.  On yet another occasion, Defendant Patrick ordered one of his bodyguards to assault Plaintiff.  Given Defendant Patrick's documented history of committing acts of physical violence against others, Plaintiff reasonably believed that Defendant Patrick would carry out his repeated threats of physical violence against Plaintiff.

113.   Plaintiff is informed and believes and thereon alleges that as a direct, foreseeable, legal and proximate result of Defendant Patrick's intentional, willful, deliberate conduct, as herein alleged, Plaintiff suffered and continues to suffer loss of reputation, shame, humiliation, embarrassment, severe mental and emotional distress and anguish as well as anxiety, trepidation, apprehension, panic, dread, fear, worry, and hurt feelings all to his damage in an amount to be proven at trial.  The acts, omissions and conduct of Defendant Patrick were and continue to be oppressive, deliberate, intentional, reprehensible, and malicious and were carried out in a conscious disregard of their probable outcome.

114.   Plaintiff is further informed and believes and thereon alleges that Defendant Patrick acted in a willful, deliberate, and intentional manner, and that his conduct was and continues to be despicable, malicious, and outrageous in that it has caused and continues to cause Plaintiff to needlessly suffer cruel and unjust hardship. Thus, Defendant Patrick's conduct, actions and/or omissions as herein set forth, justify an award of punitive damages in an amount sufficient to deter him from ever engaging in such conduct again in the future.

## SIXTH CAUSE OF ACTION

(Sexual Harassment – against Defendants MICHAEL PATRICK CARROLL and DOES 1 through 50, inclusive)

115.   Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth.

116.   The essential elements of a cause of action for sexual harassment are: (1) Ty had a professional relationship with Patrick; (2) Patrick engaged in verbal and/or visual conduct of a sexual nature; (2) Patrick's conduct was unwelcome and also pervasive and severe; and (4) Ty has suffered economic loss and personal injury as result of Patrick's conduct.  CACI No. 3065.  *Lewis v City of Benicia* (2014) 224 Cal.App.4th 1519, 1524.

117.   Plaintiff was repeatedly sexually harassed when Patrick sent Ty pictures of himself in a bathtub holding his exposed penis, and walking around naked in front of Ty. *See* Exhibit H. Further, Patrick sent Ty sexually explicated messages, such as phrases "I'll jerk my own dick off."

118.   Defendant's unwelcome conduct was unsolicited, pervasive and beyond all possible bounds of decency.

119.   The Defendant's actions humiliated Ty and caused him severe anxiety, sleeping problems and mental anguish.  According to the California Supreme Court, the distinction between a mental and physical injury is artificial.  *Molien v. Kaiser Found. Hosps.* (1980) 27 Cal. 3d 916, 930.  Rather the determination hinges on

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

whether the plaintiff suffered a serious and compensable injury.  *Id*.  Further, the aftermath of sexual harassment suffered by Plaintiff has left him unable to find another job, support himself and even remain in his current home.

120.  Plaintiff is informed and believes and thereon alleges that Defendant Patrick acted in a willful, deliberate, and intentional manner, and that his conduct was and continues to be despicable, malicious, and outrageous in that it has caused and continues to cause Plaintiff to needlessly suffer cruel and unjust hardship.  Thus, Defendant Patrick's conduct, actions and/or omissions as herein set forth, justify an award of punitive damages in an amount sufficient to deter him from ever engaging in such conduct again in the future.

## SEVENTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress - against Defendants MICHAEL PATRICK CARROLL, MPC PARTNERSHIP, RMR, and DOES 1 through 50, inclusive)

121.  Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

122.  Plaintiff is informed and believes and based thereon alleges that the wrongful and unlawful practices and other misconduct set forth herein, committed by Defendants, as herein alleged, exceeded the normal risk of the employment relationship that Plaintiff had with Defendants, including routinely subjecting Plaintiff to derogatory racial remarks, including Defendant Patrick's repeated use of the "n-word" directly referencing Plaintiff.  Defendant Patrick on multiple occasions called Plaintiff the "n-word" while making direct threats of violence against Plaintiff.  Defendant Patrick also constantly used the "n-word" and made other racial slurs and derogatory statements about African American individuals to and in the presence of Plaintiff.  Defendant Patrick also repeatedly threatened Plaintiff with physical violence, including a threat to "whip your ass in front of everyone and laugh," a threat

FIRST AMENDED COMPLAINT

to shoot Plaintiff in the foot, and an order to his bodyguard to assault Plaintiff.  These repeated and constant threats of violence were credible because Defendant Patrick has a well-documented history of physical violence against others.  Defendant Patrick also frequently sent unsolicited pictures of his penis to Plaintiff and walked around naked in Plaintiff's presence.   Defendant Patrick also sent text messages to Plaintiff containing derogatory and misogynistic comments.   Finally, Defendant Patrick regularly consumed illegal substances including mushrooms, ketamine, and pink cocaine in Plaintiff's presence.

123.   Defendants wrongfully, willfully, and/or intentionally sought to inflict emotional distress upon Plaintiff through the conduct, actions and/or omissions described herein.  As such, the subject conduct was so extreme and outrageous that it exceeded the boundaries of a decent society and lies outside the compensation bargain.

124.   Plaintiff is informed and believes and thereon alleges that Defendants knew, must have known, should have known, or had reason to know that their conduct, as herein alleged, was substantially certain to inflict emotional distress upon Plaintiff.  As such, Defendants' conduct was intentional, malicious, and carried out with a deliberate, conscious and/or reckless disregard of the high degree of probability that such conduct would inflict extreme emotional distress upon Plaintiff.

125.   Plaintiff is informed and believes and thereon alleges that as a direct, foreseeable, legal and proximate result of Defendants' intentional, willful, deliberate conduct, as herein alleged, Plaintiff suffered and continues to suffer loss of reputation, shame, humiliation, embarrassment, severe mental and emotional distress and anguish as well as anxiety, trepidation, apprehension, panic, dread, fear, worry, and hurt feelings all to his damage in an amount to be proven at trial.  The acts, omissions and conduct of Defendants were and continue to be oppressive, deliberate, intentional, reprehensible, and malicious and were carried out in a conscious disregard of their probable outcome.

FIRST AMENDED COMPLAINT

126.  Plaintiff is further informed and believes and thereon alleges that Defendants acted in a willful, deliberate, and intentional manner, and that their conduct was and continues to be despicable, malicious, and outrageous in that it has caused and continues to cause Plaintiff to needlessly suffer cruel and unjust hardship. Thus, Defendants' conduct, actions and/or omissions as herein set forth, justify an award of punitive damages in an amount sufficient to deter them from ever engaging in such conduct again in the future.

## **EIGHTH CAUSE OF ACTION**

(Violation of Cal. Bus. & Prof. Code section 17200 et seq. - against Defendants MICHAEL PATRICK CARROLL, MPC PARTNERSHIP, and RMR and DOES 1 through 50, inclusive)

127.  Plaintiff incorporates by reference and re-alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

128.  Labor Code section 226.8 provides, in relevant part: "It is unlawful for any person or employer to engage in any of the following activities: (1) Willful misclassification of an individual as an independent contractor."  As alleged herein, Defendants violated Labor Code section 226.8 by intentionally and willfully misclassifying Plaintiff as an "independent contractor," despite his true and authentic status as an employee of Defendants.  Since the end of 2020, Ty worked as an employee of MPC Partnership.  The entity controlled Ty's schedule, purchased his equipment, assigned him an official company email and effectively prohibited from obtaining any other employment.

129.  Defendants Carroll, MPC Partnership and RMR Group through their actions, violated California Business and Professions Code Section 17200 *et seq.* by engaging in unlawful, business practices by violating Labor Code section 226.8.

130.  Plaintiff seeks up to the maximum allowable penalty under section 226.8 and the UCL for Defendants' intentional misclassification of Plaintiff as an

independent contractor.

## NINTH CAUSE OF ACTION

(Failure to Prevent Discrimination or Harassment in Violation of FEHA (Cal. Gov. Code §§ 12900, et seq.) – against Defendants MPC PARTNERSHIP, RMR and DOES 1 through 50, inclusive)

131.  Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

132.  It is an unlawful employment practice in California for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.



133.  During the course of Plaintiff's employment, Defendants MPC Partnership and RMR failed to prevent its employees from engaging in unjustified employment practices against Plaintiff. Defendant RMR condoned, encouraged, tolerated, sanctioned, ratified, approved of and/or acquiesced in race discrimination toward and harassment of Plaintiff.

134.  During the course of Plaintiff's employment, Defendants MPC Partnership and RMR failed to prevent a pattern and practice by its employees of intentional discrimination and harassment towards Plaintiff based on Plaintiff's race.

135.  As a direct and proximate result of Defendant MPC Partnership's and RMR's willful, knowing and intentional conduct against Plaintiff, Plaintiff has sustained, and continues to sustain, loss of earnings and benefits, the full nature and extent of which are presently unknown to Plaintiff, who therefore, will seek leave of this Court to amend this Complaint at such time as these damages are fully ascertained.

136.  As a further direct and proximate result of Defendant MPC Partnership's and RMR's conduct against Plaintiff in violation of Government Code section 12940, as heretofore described, Plaintiff has been damaged and deprived of the security,

solace, and peace of mind for which he entered the employment relationship with Defendants MPC Partnership and RMR, thereby causing Plaintiff to suffer emotional and mental distress, anguish, embarrassment, and humiliation, all to his general damages in an amount according to proof at trial, but in excess of the jurisdictional amount of this Court.

137.   As a further result of Defendant MPC Partnership's and RMR's conduct, Plaintiff has incurred, and will continue to incur, attorneys' fees and costs and is entitled to recover reasonable attorneys' fees and costs from Defendant RMR pursuant to Government Code section 12965.

138.   Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendants MPC Partnership and RMR described above was done with malice, fraud and oppression with conscious disregard for his rights and with the intent, design, and purpose of injuring Plaintiff. Defendants MPC Partnership and RMR, through its officers, managing agents and/or supervisors, authorized, condoned and/or ratified the unlawful conduct of all of the other Defendants named in this Complaint. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from all Defendants in a sum according to proof at trial.

**TENTH CAUSE OF ACTION**

(Failure to Investigate in Violation of FEHA (Cal. Gov. Code §§ 12900, et seq.) – against Defendants MPC PARTNERSHIP, RMR and DOES 1 through 50, inclusive)

139.   Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

140.   It is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Gov. Code. § 12940(k).  One such reasonable step is a prompt investigation of the discrimination claim.  (*Northrop Grumman Corp. v. Workers'*

1    *Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021, 1035).

2      141.  Defendants MPC Partnership and RMR failed to properly investigate

3 complaints made by Plaintiff about racial discrimination and harassment in the

4 workplace.  Defendants MPC Partnership's and RMR's failure to investigate

5 complaints about FEHA violations was in violation of its duty pursuant to FEHA.

6      142.  As a direct and proximate result of Defendants MPC Partnership's and

7 RMR's willful, knowing and intentional conduct against Plaintiff, Plaintiff has

8 sustained, and continues to sustain, loss of earnings and benefits, the full nature and

9 extent of which are presently unknown to Plaintiff, who, therefore, will seek leave of

10 this Court to amend this Complaint at such time as these damages are fully

11 ascertained.



12      143. As a further direct and proximate result of Defendants MPC

13 Partnership's and RMR's conduct against Plaintiff in violation of Government Code

14 section 12940, as heretofore described, Plaintiff has been damaged and deprived of

15 the security, solace, and peace of mind for which he entered the employment

16 relationship with Defendant MPC Partnership and RMR, thereby causing Plaintiff to

17 suffer emotional and mental distress, anguish, embarrassment, and humiliation, all to

18 his general damages in an amount according to proof at trial, but in excess of the

19 jurisdictional amount of this Court.

20      144.  As a further result of Defendant MPC Partnership's and RMR's conduct,

21 Plaintiff has incurred, and will continue to incur, attorneys' fees and costs and is

22 entitled to recover reasonable attorneys' fees and costs from Defendant MPC

23 Partnership and RMR pursuant to Government Code section 12965.

24      145.  Plaintiff is informed and believes, and based thereon alleges, that the

25 outrageous conduct of Defendant MPC Partnership and RMR described above was

26 done with malice, fraud, and oppression with conscious disregard for his rights and

27 with the intent, design, and purpose of injuring Plaintiff.  Defendants MPC

28 Partnership and RMR, through their officers, managing agents, and/or supervisors,

authorized, condoned and/or ratified the unlawful conduct of all of the other Defendants named in this Complaint.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from MPC Partnership and RMR in a sum according to proof of at trial.

**ELEVENTH CAUSE OF ACTION**

(Negligent Hiring, Training, Supervision and/or Retention – against Defendants MPC Partnership, RMR and DOES 1 through 50, inclusive)

146.    Plaintiff re-alleges and incorporates by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

147.    An employer can be held liable under common law for the negligent hiring, supervision, training, and retention of an employee.  Under common law, an employer is liable for negligent hiring and/or retention of an employee based upon the employer's actual or constructive knowledge that hiring and/or retaining an employee created a particular risk or hazard and that particular harm actually materialized.

148.    At all times mentioned in this Complaint, Defendants MPC Partnership and RMR held and exercised authority to hire, retain, supervise, train/instruct, and discipline its employees.

149.    Defendants MPC Partnership and RMR owed Plaintiff a duty of care to properly hire, supervise, train/instruct, and discipline its management and employees, in order to provide and maintain a workplace free from harassment, discrimination, retaliation, and Labor Code violations.

150.    Defendants MPC Partnership RMR breached its duty of care by negligently hiring, retaining, supervising, and/or training/instructing its employees.

151.    Defendants MPC Partnership and RMR had actual or constructive knowledge that its employees engaged in harassment, discrimination, and retaliation against Plaintiff in violation of FEHA.

**FIRST AMENDED COMPLAINT**

152.   Notwithstanding Defendants MPC Partnership and RMR's actual or constructive notice of its employees' propensity to engage in harassment, discrimination, and retaliate in violation of FEHA, Defendants MPC Partnership and RMR did nothing to prevent the unlawful conduct from occurring.

153.   As a direct and proximate result of Defendants MPC Partnership's and RMR's conduct against Plaintiff, Plaintiff has sustained, and continues to sustain, loss of earnings and benefits, the full nature and extent of which are presently unknown to Plaintiff, who, therefore, will seek leave of this Court to amend this Complaint at such time as these damages are fully ascertained.

## **PRAYER**

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

A.     For general and compensatory damages according to proof, including, without limitation, past, present and future economic and non-economic damages;

B.     For lost salary, both front and back pay, bonuses, benefits, and any other benefits to which Plaintiff would have been entitled to by reason of his employment with Defendants, according to proof;

C.     For penalties under Labor Code section 1102.5;

D.     For punitive and exemplary damages against Defendants;

E.     For prejudgment interest at the maximum rate allowed by law;

F.     For reasonable attorneys' fees pursuant to Government Code section 12965, subdivision (b);

G.     For costs of suit incurred herein; and

H.     For such other and further relief as the Court deems just and proper.

FIRST AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial as to all causes of action.

Dated:  April 2, 2025                    **SANDERS ROBERTS LLP**

By: _____

Justin H. Sanders
Reginald Roberts, Jr.
Navdeep K. Singh
Jason S. Ziven
*Attorneys for Plaintiff*
**MAURICE HALLOWAY**

# **<u>EXHIBIT A</u>**

Advertisement

TRENDING



SOUTH FLORIDA

# Patrick Carroll being sued for defamation, banned from Major Food and Simon Kim restaurants

Multifamily mogul accused of slander, racial and homophobic slurs



Advertisement



*Photo illustration of Patrick Carroll of the Carroll Organization (Illustration by The Real Deal/Getty)*

**By Francisco Alvarado**

*JUN 14, 2023, 5:30 PM*

Patrick Carroll apparently has a hard time being nice to workers at fancy restaurants, and now is facing legal trouble because of it.

A restaurant manager in Miami's Wynwood who Carroll allegedly spat on — as first reported by *The Real Deal* — sued the Miami Beach-based real estate mogul for defamation last week.

Carroll founded Carroll Organization, an Atlanta-based real estate investment firm with $7.4 billion worth of multifamily properties across the U.S. He is currently looking to sell his eponymous company.

Carroll has a notorious short fuse. In his complaint filed in Miami-Dade Circuit Court, Miguel Angel Weill highlights a pair of Carroll's alleged incidents at other South Florida dining establishments frequented by wealthy and famous people. Carroll was banned from all restaurants owned by New York-based Major Food Group and New York restauranter Simon Kim, according to the complaint.

At Major Food's Carbone in Miami Beach's South of Fifth neighborhood, Carroll allegedly called a service manager a "street N-word" after being asked to leave the Italian restaurant for allegedly harassing a waiter and being overly intoxicated, Weill's lawsuit alleges. The alleged incident took place in December.

Advertisement





Sign in     Subscribe



*Carbone in Miami Beach (Google Maps)*

The complaint states Carroll also used an "F-word" homophobic slur against a staffer at Kim's Cote Miami restaurant in the Miami Design District. It doesn't say when the incident took place. After being banned from Cote, Carroll allegedly reached out to Kim, asking the Korean entrepreneur not to say anything bad about him, the lawsuit claims.

Kim and Major Food Group did not respond to requests for comment.

Carroll has not been served with Weill's lawsuit, so he cannot speak to the specific allegations in it, Carroll's attorney Duncan Levin said via an emailed statement.

Advertisement

Enter Your Email                              SIGN UP

His client is focused on his philanthropy, including "personally handing out" $100,000 worth of sneakers to a Boys & Girls Club in New York this week as part of a $1 million shoe giveaway to underserved and underprivileged youth, Levin said.

"He will fight any accusations in court, not the press," Levin said.

This is the second time Carroll is sued for defamation in the past two years.

In 2021, Michael Lundy, a Tampa-based divorce lawyer who represented Carroll's ex-wife in their messy break-up, sued the real estate investor in Hillsborough County for allegedly making false statements about the attorney on social media.

In the latest lawsuit, Weill, a maître d' and manager at the Wynwood eatery Hiyakawa Miami, alleges Carroll falsely accused him of attempted extortion via comments that Carroll Organization's spokesperson, Lewis Goldberg, provided to *TRD* in April, the lawsuit states.

At the time, *TRD* obtained closed circuit video footage from Hiyakawa's owner Alvaro Perez Miranda that he and Weill claimed shows Carroll spitting in the maître d's face. Miranda said he and his partners banned Carroll from all their restaurants.

Advertisement



*Hiyakawa Miami and Kim's Cote Miami (Hiyakawa, Kim's Cote Miami)*

Carroll admitted to having a confrontation with Weill, but denied that spit flew out of his mouth, Goldberg told *TRD*. Goldberg's comment that Weill allegedly told Carroll "I want you to hit me so I can get paid" was defamatory, the lawsuit states.

The alleged spitting incident and its aftermath have been "quite a traumatic experience" for Weill, said his lawyer Anthony Narula. "[Weill] has been under a great deal of stress and anxiety," Narula said. "He is passionate about what he does, and the incident has prevented him from fully focusing on that."

In his complaint, Weill claims that he also suffered emotional distress due to a legal threat from Carroll if he didn't retract his statements to *TRD*. "Mr. Carroll could have come to the restaurant and given Miguel a sincere apology for his outrageous conduct," Narula said. "Instead he sent a demand letter to Miguel with a threat of a lawsuit."

TAGS

Carroll Organization    Lawsuits    Major Food Group    Miami Beach    Patrick Carroll

 **Top stories delivered to your inbox**

FEATURED                                      WEEKLY

Advertisement

Enter Your Email

SIGN UP

## Recommended For You

Advertisement



ABOUT US

CONTACT US

PRIVACY POLICY

TERMS AND CONDITIONS

SUBSCRIBE

CORPORATE SUBSCRIPTIONS

ADVERTISE

HELP CENTER

CAREERS

SHOP

All rights reserved © 2024 The Real Deal is a registered Trademark of Korangy Publishing Inc.

450 West 31st Street, New York, NY 10001 Phone: 212-260-1332

     

# EXHIBIT B



Two Newton Place
255 Washington Street, Suite 300
Newton, Massachusetts 02458
617-796-8390
rmrgroup.com

NEWS RELEASE

# The RMR Group to Acquire CARROLL Multifamily Platform

7/31/2023

Transaction Adds Vertically Integrated Multifamily Platform with Approximately $7 Billion in AUM and Over 28,000 Units Across Sunbelt Markets

Broadens RMR's Position as a Leading Alternative Asset Manager and Advances Strategic Focus on Growing Private Capital Business, Doubling Private Capital AUM to $15 Billion and Growing Total AUM to $44 Billion

All Cash Transaction Expected to be Immediately Accretive

NEWTON, Mass.--(BUSINESS WIRE)-- **The RMR Group (Nasdaq: RMR)** today announced that it has entered into a definitive agreement to acquire 100% of the equity interests in MPC Partnership Holdings, LLC, doing business as CARROLL ("CARROLL"), a vertically integrated multifamily platform, in an all cash transaction for $80 million, subject to customary purchase price adjustments, with the potential for incremental earnout consideration up to $20 million based on the deployment of future capital.

The acquisition is an attractive opportunity for RMR to enter the only major commercial real estate sector in which RMR does not have a significant presence. CARROLL also brings an advanced technology infrastructure and digital marketing capabilities that may be leveraged across the RMR platform. The transaction further advances RMR's strategic focus on growing its private capital business, adding approximately $7 billion in assets under management ("AUM") and over 20 institutional partner relationships.

Founded in 2004 and headquartered in Atlanta, Georgia, as of March 31, 2023 CARROLL provides asset and property management services to 81 multifamily properties with more than 28,000 units, primarily located across

1

the Sunbelt markets of the United States. With approximately 700 employees, CARROLL's platform combines leading operations with deep market knowledge and expertise in capital raising, property acquisitions, asset management and property management through its in house brand, ARIUM Living, to unlock value at managed assets. The company's highly scalable, profitable and asset light business generates recurring fee income, with a track record of delivering average gross realized returns of nearly 30% for institutional investors. Since inception, CARROLL has executed more than $12 billion in real estate acquisitions and currently has the potential to make multifamily investments in excess of $3 billion in its current general partner fund series.

**Adam Portnoy**, President & Chief Executive Officer of The RMR Group, made the following statement:

"We are excited to announce the strategic acquisition of CARROLL, a leading vertically integrated multifamily housing platform. This transaction will further diversify and expand the reach of RMR, augmenting RMR's already considerable scale with differentiated operational expertise in a favored commercial real estate sector. Importantly, the CARROLL platform is uniquely positioned to continue benefitting from favorable demographic tailwinds in high-growth Sunbelt markets. Additionally, this acquisition will advance RMR's private capital growth strategy with high-quality global institutional investors and drive continued growth across the combined platform with the potential to make in excess of $3 billion of additional multifamily investments. We look forward to welcoming the CARROLL team to RMR at closing and supporting CARROLL's continued growth and expanding its operations as part of RMR."

Patrick Carroll, Founder & Chief Executive Officer of CARROLL, made the following statement:

"I'm incredibly proud of the business my team and I have built over the past nearly 20 years with the support of our investors and partners and I'm thrilled to see CARROLL take the next step under RMR's ownership. CARROLL's long track record of success and expertise in the multifamily sector will perfectly complement RMR's diverse real estate investment management platform. I believe RMR is the right company to lead the CARROLL team and business through the next phase of growth, while continuing to focus on the core tenets of our business – consistently delivering best-in-class management and generating meaningful value for our partners."

## Strategic and Financial Rationale

The acquisition of CARROLL represents the successful advancement of RMR's strategic plan to expand its private capital business and utilize its balance sheet to diversify into additional real estate sectors. The transaction advances the following objectives:

<u>Diversification</u>

- Expands the RMR platform by providing multifamily expertise across the Sunbelt markets via a leading

2

vertically integrated operator.

- Provides additional high quality institutional investors through CARROLL's existing joint venture and limited partner relationships.
- Adds a profitable, scalable and asset light business with a recurring revenue stream.
- Leverages CARROLL's experience and expertise in value add multifamily investing, diversifying RMR's capabilities beyond core plus real estate and supporting future multifamily vehicles.

Growth & Scale

- Enhances RMR's position as a leading alternative asset management platform, growing total AUM to approximately $44 billion and private capital AUM to approximately $15 billion.
- Positions RMR for continued growth, including through the ability of CARROLL's general partner fund series to make in excess of $3 billion of additional multifamily investments.

Value Creation

- Expected to be immediately accretive to Adjusted EBITDA, Adjusted EPS and Distributable Earnings per share.
- Provides RMR with a proven fund platform to generate performance-based promote fees on new co-investments.

## Key Transaction Details

RMR is acquiring 100% of the equity interest in CARROLL for $80 million, subject to customary purchase price adjustments, with the potential for incremental earnout consideration up to $20 million tied to the deployment of future capital. The sellers are to retain existing general partner co-investments and promote fees derived from those investments. The transaction is expected to be funded entirely with cash on hand, and the transaction price, excluding contingent earnout consideration, reflects an implied valuation of 11.4x to 13.3x of CARROLL's recurring 2024 EBITDA and 6.2x to 7.3x of CARROLL's recurring 2024 EBITDA adjusted for potential synergies.

In the first full year of operations post closing, RMR expects the CARROLL platform to generate more than $35 million in recurring fees and approximately $11 million to $13 million of Adjusted EBITDA, including $5 million to $6 million of synergies. Post transaction, RMR expects to have no debt and approximately $200 million of cash on hand for further opportunistic growth strategies.

## Approvals and Closing

The transaction, which was unanimously approved by RMR's Board of Directors, is expected to close in the fall of 2023, subject to customary conditions, primarily obtaining limited partner, joint venture partner and lender consents.

## Advisors

The CenterCap Group, LLC is serving as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to RMR on this transaction. UBS Investment Bank is acting as exclusive financial advisor and King & Spalding LLP is acting as legal advisor to CARROLL.

## Investor Presentation

A supplemental investor presentation on the transaction is available on the Investor Relations section of RMR's website at **rmrgroup.com**.

RMR plans to discuss this pending transaction during its fiscal third quarter 2023 conference call scheduled for Thursday, August 10, 2023 at 10:00 a.m. Eastern Time. The conference call telephone number is (877) 270-2148. Participants calling from outside the United States and Canada should dial (412) 902-6510. No pass code is necessary to access the call from either number.

## Non-GAAP Financial Measures

This press release contains references to non-GAAP financial measures including Adjusted EBITDA, Adjusted EPS and Distributable Earnings per share. These measures are "non-GAAP financial measures" within the meaning of the applicable rules of the SEC. For a calculation and definition of these measures, please refer to RMR's earnings presentations, Form 8-K filings and financial reports. Copies of all RMR filings are available from the Investor Relations section of the company's website, **rmrgroup.com**, and from the SEC.

## About The RMR Group

The RMR Group is a leading U.S. alternative asset management company, unique for its focus on commercial real estate ("CRE") and related businesses. RMR's vertical integration is supported by approximately 600 real estate professionals in more than 30 offices nationwide who manage over $37 billion in assets under management and leverage more than 35 years of institutional experience in buying, selling, financing and operating CRE. RMR benefits from a scalable platform, a deep and experienced management team and a diversity of direct real estate strategies across its clients. RMR is headquartered in Newton, MA and was founded in 1986. For more information, please visit **www.rmrgroup.com**.

WARNING REGARDING FORWARD-LOOKING STATEMENTS

This press release includes forward-looking statements that are within the meaning of the Private Securities Litigation Reform Act of 1995 and other securities laws that are subject to subject to risks and uncertainties. These statements may include words such as "believe," "could," "driving," "estimate," "expect," "goal," "intend," "may," "plan," "project," "seek," "should," "will," "would," "considering," and similar expressions. Forward-looking statements include, without limitation, statements regarding the transaction, prospective performance, future plans, events, expectations, performance, objectives and opportunities and the outlook for CARROLL's business, the expected timing of the completion of the transaction; the ability to complete the transaction considering the various closing conditions; and the accuracy of any assumptions underlying any of the foregoing. Investors are cautioned that any such forward-looking statements are not guarantees of future performance and involve risks and uncertainties and are cautioned not to place undue reliance on these forward-looking statements. Actual results may differ materially from those currently anticipated due to a number of risks and uncertainties. For example, the closing of the transaction is subject to the satisfaction or waiver of closing conditions, consents with respect to managed funds, joint-venture partners and applicable lenders, some of which are beyond our control, and RMR cannot be sure that any or all of these conditions will be satisfied or waived. Accordingly, the transaction may not close on the contemplated terms or at all or it may be delayed. The transaction is subject to various additional risks, including: the risk that the business will not be integrated successfully or that the integration will be more costly or more time-consuming and complex than anticipated; the risk that cost savings and synergies anticipated to be realized by the transaction may not be fully realized or may take longer to realize than expected; the occurrence of any event, change or other circumstance that could give rise to the termination of the purchase agreement underlying the transaction; risks related to future opportunities, plans and strategy for CARROLL, including the uncertainty of expected future financial performance, expected access to capital, timing of accretion and operating results of RMR following completion of the transaction and the challenges facing the industries in which RMR and CARROLL operate; the risk that the transaction will divert management's attention from RMR's ongoing business operations; changes in CARROLL's business during the period between now and the closing of the transaction; risks associated with the impact of general economic, political and market factors on us, CARROLL or the transaction; and other matters. These factors should not be construed as exhaustive and should be read in conjunction with other cautionary statements that are included in RMR's periodic filings. The information contained in RMR's filings with the Securities and Exchange Commission ("SEC"), including under the caption "Risk Factors" in its periodic reports, or incorporated therein, identifies important factors that could cause differences from the forward-looking statements in this press release. RMR's filings with the SEC are available on its website and at **www.sec.gov**. You should not place undue reliance on forward-looking statements. Except as required by law, RMR undertakes no obligation to update any forward-looking statement, whether as a result of new information, future events or otherwise.

Kevin Barry, Director, Investor Relations

(617) 658-0776

Source: The RMR Group Inc.

# EXHIBIT C



Two Newton Place
255 Washington Street, Suite 300
Newton, Massachusetts 02458
617-796-8390
rmrgroup.com

NEWS RELEASE

# The RMR Group Completes Acquisition of CARROLL Multifamily Platform

12/19/2023

Accretive Transaction Expands RMR's Expertise and Private Capital AUM

NEWTON, Mass.--(BUSINESS WIRE)-- **The RMR Group (Nasdaq: RMR)** today announced that it has completed its acquisition of MPC Partnership Holdings, LLC, doing business as CARROLL ("CARROLL"), a vertically integrated multifamily platform. The acquisition, which was announced on July 31, 2023, expands RMR's platform to include multifamily commercial real estate, the only major property sector in which RMR did not have a significant presence, increases its private capital assets under management and diversifies its roster of private capital clients.

**Adam Portnoy**, President and Chief Executive Officer of RMR, made the following statement:

> "With the CARROLL acquisition, RMR was able to implement our growth strategy of leveraging our strong balance sheet to make strategic acquisitions. Today, we acquired a vertically integrated organization that expands our scale, diversifies our platform, substantially increases our private capital assets under management and is financially accretive. I welcome the experienced and talented CARROLL team to RMR and look forward to working with them to further expand our multifamily platform.

> "With more than $200 million in cash remaining after completing the CARROLL acquisition and no debt, RMR is well-positioned to pursue additional growth opportunities that deliver attractive risk adjusted returns for our shareholders."

## Transaction Details

RMR acquired 100% of the equity interests in CARROLL for $80 million in cash, subject to customary purchase price adjustments, with the potential for incremental earnout consideration up to $20 million based on the deployment of the remaining capital commitments of the existing CARROLL investment funds. Consents approving the transaction were received from all limited partners, joint venture partners and lenders to the extent that their consent was required in connection with the transaction.

## Advisors

The CenterCap Group, LLC served as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP acted as legal advisor to RMR on this transaction. UBS Investment Bank served as exclusive financial advisor and King & Spalding LLP served as legal advisor to CARROLL.

## About The RMR Group:

The RMR Group is a leading U.S. alternative asset management company, unique for its focus on commercial real estate (CRE) and related businesses. RMR's vertical integration is supported by over 600 real estate professionals in more than 30 offices nationwide who manage approximately $36 billion in assets under management and leverage more than 35 years of institutional experience in buying, selling, financing and operating CRE. RMR benefits from a scalable platform, a deep and experienced management team and a diversity of direct real estate strategies across its clients. RMR is headquartered in Newton, MA and was founded in 1986. For more information, please visit **www.rmrgroup.com**.

WARNING REGARDING FORWARD-LOOKING STATEMENTS

This press release includes forward-looking statements that are within the meaning of the Private Securities Litigation Reform Act of 1995 and other securities laws that are subject to subject to risks and uncertainties. These statements may include words such as "believe," "could," "driving," "estimate," "expect," "goal," "intend," "may," "plan," "project," "seek," "should," "will," "would," "considering," and negative or derivatives of these or similar expressions. Forward-looking statements include, without limitation, statements regarding the transaction, prospective performance, future plans, events, expectations, performance, objectives and opportunities and the outlook for CARROLL's business and the accuracy of any assumptions underlying any of the foregoing. Investors are cautioned that any such forward-looking statements are not guarantees of future performance and involve risks and uncertainties and are cautioned not to place undue reliance on these forward-looking statements. Actual results may differ materially from those currently anticipated due to a number of risks and uncertainties. The transaction is subject to various additional risks, including: the risk that the business will not be integrated successfully or that the integration will be more costly or more time-consuming and complex than anticipated; the risk that cost savings and synergies anticipated to be realized by the transaction may not be fully realized or may

take longer to realize than expected; risks related to future opportunities, plans and strategy for CARROLL, including the uncertainty of expected future financial performance, expected access to capital, timing of accretion and operating results of RMR following completion of the transaction and the challenges facing the industries in which RMR and CARROLL operate; the risk that the transaction will divert management's attention from RMR's ongoing business operations; risks associated with the impact of general economic, political and market factors on us, CARROLL or the transaction; and other matters. These factors should not be construed as exhaustive and should be read in conjunction with other cautionary statements that are included in RMR's periodic filings. The information contained in RMR's filings with the Securities and Exchange Commission ("SEC"), including under the caption "Risk Factors" in its periodic reports, or incorporated therein, identifies important factors that could cause differences from the forward-looking statements in this press release. RMR's filings with the SEC are available on its website and at **www.sec.gov**. You should not place undue reliance on forward-looking statements. Except as required by law, RMR undertakes no obligation to update any forward-looking statement, whether as a result of new information, future events or otherwise.

Kevin Barry, Senior Director, Investor Relations
(617) 658-0776

Source: The RMR Group Inc.

# EXHIBIT D



SO I'M OUT HERE

N word...

Try me bitch

I'll whip your ass in front of everyone and laugh

Your fired

# EXHIBIT E



# EXHIBIT F



# EXHIBIT G



**CERTIFICATE OF SERVICE**

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

[FED. R. CIV. P. 5(B)]

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and am not a party to the within action; my business address is 1055 West 7th Street, Los Angeles, CA 90017.  My electronic service address is elegaspi@sandersroberts.com.

On April 2, 2025, I served the following document(s) described as **FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

☐  **By Mail:**  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐  **By Electronic Mail:**  I caused the documents to be transmitted by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) shown.  I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission(s) were unsuccessful.

☒  **By CM/ECF:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

I declare that I am employed in the office of a member of the bar of the court at whose direction the service was made.

Executed on April 2, 2025, at Los Angeles, California.

*/s/ELLIOTT LEGASPI*
Elliott Legaspi

SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**SERVICE LIST**

*Holloway v. Carroll*

Case No.: 2:25-cv-02183 DSF (MARx)

| | |
|---|---|
| Andrew B. Brettler<br>Jake A. Camara<br>BERK BRETTLER LLP<br>9119 Sunset Boulevard<br>West Hollywood, CA 90069<br>Telephone: (310) 278-2111<br>Facsimile: (310) 550-7055<br>abrettler@berkbrettler.com<br>jcamara@berkbrettler.com | Attorneys for Defendant<br>Michael Patrick Carroll |
| William J. Brown, Jr.<br>Matthew K. Wegner<br>BROWN WEGNER LLP<br>2010 Main Street, Suite 1260<br>Irvine, CA 92614<br>Telephone: (949) 705-0080<br>bill@brownwegner.com<br>mwegner@brownwegner.com | Attorneys for Defendants<br>MPC Partnership Holdings, LLC<br>The RMR Group LLC |
| Carla A. Reeves<br>Jennifer B. Furey<br>Victoria C. Mariconti<br>GOULSTON AND STORRS<br>One Post Office Square<br>Boston, MA 20109<br>Telephone: (617) 482-1776<br>creeves@goulstonstorrs.com<br>jfurey@goulstonstorrs.com<br>vmariconti@goulstonstorrs.com | |

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017